UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT GEORGIA
WAYCROSS DIVISION

|  |  |  |
|---|---|---|
| GILBERTO GONZALEZ GONZALEZ, GIEZI GONZALEZ GONZALEZ, HECTOR APARICIO MAYO, DAMIAN BAAS MARQUEZ, DIEGO CAMPECHANO CHAPOL, MARCELINO CIRIACO CAMPOS, DOMINGO CARRILLO HERNANDEZ, BENJAMIN DELGADO URBANO, FORTINO DOMINGUEZ CORTAZAR, PEDRO GARCIA GOLPE, DONACIANO GOMEZ GAPI, GERARDO GONZALEZ GONZALEZ, FELIX HERRERA CARVALLO, GUADALUPE HERRERA CARVALLO, PERFECTO HERRERA MARTINEZ, HUGO IGNOT OTAPA, JOSE IXTEPAN TEMICH, MARCO KU BAAS, ADAN LANDA REYES, MOISES LANDA REYES, NARCISO LANDA SANCHEZ, EMANUEL DEL JESUS LOPEZ VELASCO, LUIS MOLINA MARTINEZ, LUIS MOLINA PRIETO, SILVESTRE MORALES DOMINGUEZ, BALTAZAR MORALES NARVAEZ, LORENZO NARVAEZ NARVAEZ, ISAIAS ORTIZ CASTELAN, NICOLAS POLITO CHIGO, OBED RAMIREZ GONZALEZ, JORGE SALAZAR MORALES, EDGAR VELA HERNANDEZ, and ULISES VELAZQUEZ RAMIREZ, | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | Civil Action No. 5:17-cv-00149-LGW-RSB |
| Plaintiffs, | : : | |
| vs. | : : | |
| SHILOH BERRY FARM, INC. and WESLEY SHANE WADE, | : : : : | |
| Defendants. | : : : : : : : | |

## FIRST AMENDED COMPLAINT

## I.      PRELIMINARY STATEMENT

1.      Plaintiffs are agricultural guest workers from Mexico who were recruited by Defendants to work for Shiloh Berry Farm, Inc., in 2017. Plaintiffs bring this action to vindicate their rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and under Georgia contract law. Plaintiffs assert that Defendants failed to pay them for all reimbursable expenses and hours of compensable work time, and terminated them in retaliation for the assertion of protected rights, in violation of both the FLSA and Plaintiffs' employment contracts with Defendants. Plaintiffs seek their unpaid and lost wages, statutory liquidated damages, unreimbursed expenses, compensatory damages, damages that arose from Defendants' breaches of contract, pre- and post-judgment interest, declaratory relief, costs, and reasonable attorneys' fees.

## II.      JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to:

      (a)      28 U.S.C. § 1331 (Federal Question);

      (b)      29 U.S.C. § 1337 (Interstate Commerce);

      (c)      29 U.S.C. § 216(b) (FLSA); and

      (d)      28 U.S.C. § 1367 (Supplemental).

3.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

4.     This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)-(d), and S.D. Ga. Local Rule 2.1, because all Defendants reside in this district and division.

### III.   PARTIES

6.     At all times relevant to this complaint, Plaintiffs[1] were citizens of Mexico who were admitted into the United States on a temporary basis, to work for Defendants under the auspices of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. § 655.0, *et seq.* Their FLSA consent forms are attached as part of composite Exhibit A.

7.     Defendant Shiloh Berry Farm, Inc., (hereinafter, "Shiloh Berry") is a Georgia Corporation, with farming operations in Bacon County, Georgia.

8.     Defendant Wesley Shane Wade (hereinafter, "Wade") is a resident of Bacon County, Georgia, and is the Chief Executive Officer of Shiloh Berry Farm, Inc.

9.     At all times relevant to this action, all Defendants were employers of Plaintiffs, under the FLSA, 29 U.S.C. § 203(g), in that they suffered or permitted Plaintiffs to work.

10.    Defendant Wade was an employer of Plaintiffs, as defined by the FLSA.

11.    Plaintiffs were economically dependent on Defendant Wade for their wages.

12.    Defendant Wade was a day-to-day manager of, and had operational control over, Defendant Shiloh Berry Farm, Inc.

---

[1]Gilberto Gonzalez Gonzalez,  Giezi Gonzalez Gonzalez, Hector Aparicio Mayo, Damian Baas Marquez, Diego Campechano Chapol, Marcelino Ciriaco Campos, Domingo Carrillo Hernandez, Benjamin Delgado Urbano, Fortino Dominguez Cortazar, Pedro Garcia Golpe, Donaciano Gomez Gapi, Gerardo Gonzalez Gonzalez, Felix Herrera Carvallo, Guadalupe Herrera Carvallo, Perfecto Herrera Martinez, Hugo Ignot Otapa, Jose Ixtepan Temich, Marco Ku Baas, Adan Landa Reyes, Moises Landa Reyes, Narciso Landa Sanchez, Emanuel del Jesus Lopez Velasco, Luis Molina Martinez, Luis Molina Prieto, Silvestre Morales Dominguez, Baltazar Morales Narvaez, Lorenzo Narvaez Narvaez, Isaias Ortiz Castelan, Nicolas Polito Chigo, Obed Ramirez Gonzalez, Jorge Salazar Morales, Edgar Vela Hernandez, and Ulises Velazquez Ramirez.

13.     Defendant Wade had the power to hire and fire Plaintiffs and control their conditions of employment.

14.     Defendant Shiloh Berry was an employer of Plaintiffs, as defined by the FLSA.

15.     Plaintiffs were economically dependent on Defendant Shiloh Berry for their work.

16.     At all times relevant to this action, Defendants were also employers of Plaintiffs as defined by the parties' employment contract. 20 C.F.R. § 655.103(b).

17.     Defendant Shiloh Berry had a place of business in the U.S. and a means by which it could be contacted for employment, had the ability to supervise and control the work of Plaintiffs, and had a valid Federal Employer Identification Number.

18.     Defendant Wade had the right to control the manner and means by which the Plaintiffs' work was accomplished, including the power to hire and fire Plaintiffs and control their conditions of employment.

19.     Under the employment of Defendants, Plaintiffs were engaged in interstate commerce or were employed in an enterprise engaged in commerce or in the production of goods for commerce, in that they were engaged in the harvesting and production of fruits for sale in interstate commerce.

**IV.     STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM**

20.     An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the United States if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). These provisions,

4

along with the implementing federal regulations, are commonly referred to as the "H-2A program."

21.     Under the H-2A program, employers must file a temporary labor certification application with the USDOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application must include a job offer, known as a "job order," which is used in the recruitment of both United States and H-2A workers.

22.     If an employer's job order meets the minimum federal regulatory requirements and is otherwise valid, U.S. worker availability is tested by use of the interstate employment service system and by the employer's own hiring efforts. If it is determined that sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the Department of Homeland Security issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

23.     The job order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions which must be offered in order to avoid adversely affecting similarly-employed U.S. workers. 20 C.F.R. § 655.121(a)(3).

24.     Among the requirements of the H-2A regulations are the following:

(a) Employers must pay the highest of the "adverse effect wage rate" ("AEWR") or the federal or state minimum wage. 20 C.F.R. § 655.122(l). The AEWR is an average annual wage for domestic agricultural workers as established each year by the USDOL and published in the Federal Register.

(b) Employers must pay full reimbursement of workers' incoming transportation costs at the 50 percent point of the contract, and provide or pay for return transportation "to

5

the place from which the worker . . . came to work for the employer" at the end of the

contract. 20 C.F.R. § 655.122(h).

(c) Employers must assure that they will not retaliate against any worker who has

exercised a right under the H-2A regulations or consulted with legal services on

matters related to the H-2A regulations. 20 C.F.R. § 655.135(h).

(d) Employers must guarantee employment for a total number of work hours equal to at

least three-fourths of the workdays of the total work period advertised in the Job

Order, or the monetary equivalent if the hours are not offered. 20 C.F.R. § 655.122(i)

(known as the "3/4 guarantee").

(e) Employers must provide housing to the workers, free of charge, and the housing must

meet federal standards. 20 C.F.R. § 655.122(d).

25.     The employment contract consists of, at a minimum, the terms of the job order and

any obligations required under the H-2A program. *See* 20 C.F.R. § 655.103(b) (definition of

"work contract.").

## V. STATEMENT OF FACTS

### Employment Contract

26.     On or around December 2016, Defendant Shiloh Berry filed job order GA 965286154

(hereinafter, "the Job Order") with the Georgia Department of Labor (GDOL) and an

Application for Temporary Employment Certification, (hereinafter, "the Application for

Certification"), with the USDOL.

6

27.    The Job Order was approved for 148 temporary positions working in blueberries at various worksites in Alma, Georgia, with work to begin on March 15, 2017 and continue until June 15, 2017. *See* Exhibit B.

28.    On behalf of Defendants, Plaintiffs were recruited in Mexico to work for Defendants.

29.     In Mexico, Defendants' agents, including recruiter Miguel Patricio, promised Plaintiffs that they would be paid $10.62 per hour.

30.    Mr. Patricio gave Plaintiffs a copy of the "Agricultural Contract Agreement," and 2 pages of the Job Order. *See* Exhibit C.  These documents promised various terms of employment. Only portions of the contents of these documents were translated into Spanish.

31.    Plaintiffs speak and read in Spanish and have limited English language skills.

32.    Based on the job offer and the Spanish content of the contract provided by Defendants, Plaintiffs reasonably believed that they would receive wages of $10.62 per hour.

33.    The applicable adverse effect wage rate ("AEWR") for 2017 was $10.62 per hour, *see* 81 Fed. Reg. 94422 (Dec. 23, 2016).

34.    The terms and conditions of the Agricultural Contract Agreement and the Job Order, together with the requirements of 20 C.F.R. § 655, constituted an offer of employment.

35.    This job offer, when accepted, created an employment contract between Defendants and each Plaintiff who accepted the offer.

36.    Plaintiffs accepted the offers of employment under the terms of employment contract.

37.    The employment contract included, but was not limited to, the following terms:

   (a) Workers would work an average of 42 hours a week.

    (b) Defendants would provide free housing and kitchen facilities that met state and federal requirements.

    (c) Defendants would not retaliate against any worker who asserted rights under the H-2A regulations or contract, or who consulted with an attorney from a legal assistance program.

    (d) Defendants would guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours were not offered.

38.    The employment contract at issue here incorporates a regulatory definition of employer found at 20 C.F.R. § 655.103(b).

39.    Defendants failed to give Plaintiffs a complete copy of the employment contract as required by 20 C.F.R. § 655.122(q).

40.    Defendants failed to fully translate the employment contract into "a language understood by the worker[s]," as required by 20 C.F.R. § 655.122(q).

<u>Travel and Immigration Expenses</u>

41.    Plaintiffs incurred various immigration, processing, and travel-related expenses in order to come to work for Defendants.

42.    In order to comply with Defendants' hiring processes, Plaintiffs traveled, at their own expense, from their homes to the U.S. Consulate in Monterrey, Mexico for the interview necessary to obtain an H-2A visa.

43.     Plaintiffs incurred expenses for lodging while they completed visa application forms, attended consular interviews, and waited for the visa applications to be processed and for the visas to be issued.

44.     Plaintiffs incurred expenses for transportation from their lodging in Monterrey to the consulate to attend interviews.

45.     At the U.S. border near Hidalgo, Texas, each Plaintiff paid a $6.00 fee to the U.S. Customs and Border Protection for the issuance of Form I-94, which is required to enter the U.S.

46.     Plaintiffs entered the U.S. on or around April 10, 2017.

47.     On or around April 12, 2017, Plaintiffs arrived in Alma, Georgia in the early morning, and began their first day of work harvesting blueberries for Defendants that same morning.

48.     The expenses described in paragraphs 41-45 were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of Defendants, as defined by 29 C.F.R. §§ 531.32(c) and 778.217.

49.     The expenses described in paragraphs 41-45 were made before receipt of Plaintiffs' first paychecks.

50.     Defendants did not reimburse Plaintiffs for any of the expenses described in paragraphs 41-45 in the first workweek.

51.     The employment contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA. *See* 20 C.F.R. § 655.135(e).

52.     In promising to pay the federally-mandated AEWR, Defendants also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing employees' wages by shifting costs to those employees.

53.     Defendants' failure to reimburse Plaintiffs for these expenses in the first workweek brought Plaintiffs' wages below the federal minimum wage and the AEWR.

Complaints about Pay and Working Conditions

54.     On various occasions, Plaintiffs asserted their right to be paid as required under their employment contract, the H-2A regulations, and the FLSA.

55.     On various occasions, Plaintiffs sought compliance with other parts of the employment contract, and complained when requirements were not satisfied.

56.     Plaintiffs' supervisor, Elias Utrera, told Plaintiffs they would be paid 50 cents per pound of blueberries picked.

57.     In the first workweek, Plaintiffs worked two days, approximately 6 hours per day.

58.     Plaintiffs calculated that they would earn approximately $25-30 per day on a piece rate basis, which would be less than what was offered to them in their work contracts and less than the FLSA minimum wage, based on the amount of fruit on the bushes and the number of pounds Plaintiffs picked.

59.     Plaintiffs complained to Mr. Utrera that they would make very little being paid by the pound, about $25-30 per day.

60.     Plaintiffs also complained to Defendant Wade about the rate and method of pay, with Mr. Utrera translating.

61.     Plaintiffs complained to Defendant Wade and Defendants' agents, including Mr. Utrera, that they did not receive a complete copy of the employment contract in Spanish.

62.     Within a few days of making the complaints described in paragraphs 54-55 and 59-61, Mr. Utrera prevented Plaintiffs from working.

63.     On or around Monday April 17, 2017, Plaintiffs went to the fields to work.

64.     When Plaintiffs arrived at the fields, Mr. Utrera prevented most of the Plaintiffs from working, and required them to wait in the fields until a bus came and transported them to Defendants' office.

65.     Defendants required these Plaintiffs to spend several hours waiting in the office.

66.     On or around the evening of April 17, 2017, Plaintiffs consulted with employees of Georgia Legal Services Program.

67.     Upon information and belief, Mr. Utrera observed Plaintiffs speaking with employees of Georgia Legal Services Program.

68.     On or around Tuesday, April 18, 2017, Mr. Utrera prevented all Plaintiffs from working and required Plaintiffs to go to Defendants' office.

69.     On or around Tuesday, April 18, 2017, all Plaintiffs participated in a GDOL investigation in Defendants' office.

70.     During the GDOL investigation, Plaintiffs complained to the GDOL about the working conditions and employer-provided housing.

71.     Plaintiffs honestly and reasonably believed the conditions they discussed with GDOL were violations of their rights under the H-2A regulations and the FLSA.

72.     Upon information and belief, on or around April 18, 2017, the GDOL informed Defendants of Plaintiffs' complaints described in paragraphs 70-71.

73.     Shortly after GDOL's visit with Defendants, on or around the evening of April 18, 2017, Defendants terminated Plaintiffs.

74.     After being terminated, Plaintiffs were immediately required to vacate the housing.

75.     Upon information and belief, workers who did not engage in the activities described in paragraphs 54-55, 59-61, 66, and 69-71 were not prevented from working, terminated, or evicted.

Wages

76.     Defendants terminated Plaintiffs, without cause, before the end of the contract period.

77.     Defendants offered less than three-fourths of the workdays of the total work period advertised in the Job Order.

78.     Defendants did not supplement Plaintiffs' wages to ensure that they were compensated for at least three-fourths of the workdays of the total work period advertised in the Job Order, as required by 20 C.F.R. § 655.122(i).

79.     In addition, Defendants did not compensate Plaintiffs for the time that they were required to wait at the fields and in the office on or around April 17 and/or April 18, 2017.

80.     Defendants therefore did not pay Plaintiffs for all compensable hours worked, as required by the FLSA, the H-2A regulations, and their employment contracts.

81.     Although H-2A workers are exempt from Social Security and Medicare Taxes under 26 U.S.C. §§ 3101 and 3121(b)(1), Defendants made deductions from Plaintiffs' pay for such taxes.

82.    Upon information and belief, Defendants did not remit these taxes to the government.

83.    Such deductions violated the requirement in the H-2A regulations that all deductions from H-2A workers' paychecks be reasonable. *See* 20 C.F.R. § 655.122(p)(1).

84.    As a result of Defendants' unlawful deductions and failure to pay Plaintiffs for all compensable hours worked as described in paragraphs 79-83, Plaintiffs' weekly earnings fell below the contractually-promised wage.

85.    Defendants' unlawful deductions and failure to pay Plaintiffs for all compensable hours worked as described in paragraphs 79-83 further reduced Plaintiffs wages below the minimum wage of $7.25 per hour required under the FLSA.

86.    Defendants also did not provide Plaintiffs with complete earning statements containing the information required by the H-2A regulations, 20 C.F.R. § 655.122(k).

## **COUNT I**: **FAIR LABOR STANDARDS ACT- RETALIATION**

87.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

88.    This Count sets forth a claim by all Plaintiffs for actual, compensatory, and liquidated damages, as well as declaratory relief for Defendants' violations of the FLSA's anti-retaliation provision. *See* 29 U.S.C. § 215(a)(3).

89.    The violations set forth in this Count resulted, in part, from Defendants' retaliation against Plaintiffs by denying them work, terminating them, and evicting them as described in paragraphs 62-68 and 73-74.

90.    Plaintiffs engaged in FLSA protected activity by asserting their rights to be paid the minimum wage as described in paragraphs 54-60 and 69-71.

91.     After engaging in the above protected activities, Plaintiffs suffered adverse action by Defendants when Defendants denied Plaintiffs the opportunity to work, and terminated and evicted Plaintiffs, as described in paragraphs 62-68 and 73-74.

92.     Defendants' adverse actions against Plaintiffs described in paragraphs 62-68 and 73-74 were causally connected to Plaintiffs' protected activities, as Plaintiffs suffered these adverse actions soon after engaging in the protected activities, Defendants knew that Plaintiffs engaged in these activities, and Defendants engaged in the adverse actions only with respect to workers who participated in protected activities, as described in paragraphs 47, 59-60, 62-65, 68, 72-75.

93.     Defendants' violations of the FLSA were willful, within the meaning of 29 U.S.C. § 255(a), as demonstrated by the allegations in paragraphs 62-65, 68, and 73-74.

94.     As a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs seek such legal and equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3).

95.     Each Plaintiff also seeks a declaratory judgment and the amount of his lost wages and an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b), as well as compensatory damages, including damages for mental and emotional distress, pre- and post-judgment interest, and reasonable attorneys' fees and litigation expenses pursuant to 29 U.S.C. §216(b).

## COUNT II: FAIR LABOR STANDARDS ACT- MINIMUM WAGE

96.     Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

97.     Defendants failed to pay Plaintiffs at least the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

98.     The violations set forth in this Count resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs 41-50. These expenses brought Plaintiffs' first week earnings below the required minimum hourly wage rate.

99.     The violations set forth in this Count also resulted, in part, from Defendants' failure to credit and pay Plaintiffs for all compensable time worked, as described in paragraphs 79-80 and 85.

100.    The violations set forth in this Count also resulted, in part, from Defendants' unlawful deductions for Social Security and Medicare taxes, which further reduced Plaintiffs' wages below minimum wage, as described in paragraphs 81-83 and 85.

101.    Defendants' violations of the FLSA were willful, within the meaning of 29 U.S.C. § 255(a), as demonstrated by the allegations in paragraphs 79-86.

102.    Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they earned less than the applicable minimum wage.

### COUNT III: BREACH OF CONTRACT- ANTI-RETALIATION PROVISIONS

103.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

15

104.     This Count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the anti-retaliation provisions of their employment contracts.

105.     Defendants offered employment on the terms and conditions set out in the Job Order and Agricultural Contract Agreement as described in paragraphs 27-38.

106.     Plaintiffs accepted Defendants' offers.

107.     Among the terms that Defendants offered and Plaintiffs accepted was a promise that Defendants would not retaliate against any worker who asserted rights under the H-2A regulations or contract, or who consulted with an employee of a legal assistance program as required by 20 C.F.R. § 655.135(h).

108.     Plaintiffs exercised or asserted rights or protections under the H-2A regulations or contract by, among other things: (1) asserting their rights to be paid in accordance with their employment contracts; (2) asserting their rights to receive a complete copy of the employment contract when they applied for their H-2A visa, translated into Spanish; and (3) asserting their rights to be provided housing that complied with federal standards, as described in paragraphs 54-61 and 69-71, and as required by their employment contract and the H-2A regulations.

109.     Plaintiffs also consulted with employees of a legal assistance program, as described in paragraph 66.

110.     Defendants retaliated against Plaintiffs when Defendants denied Plaintiffs the opportunity to work, and terminated and evicted Plaintiffs, as described in paragraphs 62-68 and 73-74.

111.     Defendants' retaliation of Plaintiffs was causally connected to Plaintiffs' exercise or assertion of protected rights under the H-2A regulations or employment contract, and to

Plaintiffs' consultation with employees of a legal assistance program, as Plaintiffs suffered these adverse actions by Defendants soon after engaging in the protected activities, Defendants knew that Plaintiffs engaged in these activities, and Defendants engaged in the adverse actions only with respect to workers who participated in the protected activities, as described in paragraphs 47 and 59-77.

112.   By retaliating against Plaintiffs, Defendants breached their employment contract with Plaintiffs.

113.   As a direct consequence of Defendants' breach of Plaintiffs' employment contract, Plaintiffs suffered economic injury.

114.   Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

<u>**COUNT IV: BREACH OF CONTRACT- THREE-FOURTHS GUARANTEE**</u>

115.   Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

116.   This Count sets forth Plaintiffs' claims for declaratory relief and damages for the Defendants' breach of the three-fourths guarantee provision of their employment contract.

117.   Defendants offered employment on the terms and conditions set out in the Job Order and Agricultural Contract Agreement as described in paragraphs 27-38.

118.   Plaintiffs accepted Defendants' offers.

119.   Among the terms that Defendants offered and Plaintiffs accepted was a promise to guarantee employment for a total number of work hours equal to at least three-fourths of the

workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours were not offered. 20 C.F.R. § 655.122(i).

120.    The violations set forth in this Count resulted, in part, from Defendants' early termination of Plaintiffs, without cause on or around April 18, 2017, after Plaintiffs had completed less than one week of the four-month contract, as described in paragraphs 47, 73, and 75-76.

121.    The violations set forth in this Count resulted, in part, from Defendants' failure to supplement Plaintiffs' wages to ensure that they were compensated for at least three-fourths of the workdays of the total work period advertised in the Job Order, as described in paragraphs 76-78.

122.    Defendants, therefore, breached their employment contract with Plaintiffs.

123.    As a direct consequence of Defendants' breach of contract, Plaintiffs suffered economic injury.

124.    Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

## **COUNT V: BREACH OF CONTRACT- WAGE PROVISIONS**

125.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

126.    This Count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the wage provisions of their employment contracts.

18

127.    Defendants offered employment on the terms and conditions set out in the Job Order and Agricultural Contract Agreement as described in paragraphs 27-38.

128.    Plaintiffs accepted Defendants' offers.

129.    Among the terms that Defendants offered and Plaintiffs accepted was a promise to pay the applicable AEWR, as detailed in paragraphs 24(a), 27, 29, and 32-33, for each hour worked.

130.    The violations set forth in this Count resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs 41-53. These expenses brought Plaintiffs' first week earnings below the AEWR.

131.    The violations set forth in this Count resulted, in part, from Defendants' failure to credit and pay Plaintiffs for all compensable time worked, as described in paragraphs 79-80 and 84.

132.    The violations set forth in this Count also resulted, in part, from Defendants' unreasonable deductions for Social Security and Medicare taxes, in violation of 20 C.F.R. § 655.122(p)(1), which further reduced Plaintiffs' wages below the AEWR, as described in paragraphs 81-84.

133.    Defendants, therefore, breached their employment contract with Plaintiffs.

134.    As a direct consequence of Defendants' breach of contract, Plaintiffs suffered economic injury.

135.    Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

## COUNT VI: BREACH OF CONTRACT- OTHER PROVISIONS

136.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

137.    This Count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of their employment contracts.

138.    Defendants offered employment on the terms and conditions set out in the Job Order and Agricultural Contract Agreement as described in paragraphs 27-38.

139.    Plaintiffs accepted Defendants' offers.

140.    Among the terms that Defendants offered and Plaintiffs accepted were promises to:

(a) Provide Plaintiffs with a copy of the employment contract in "a language understood by the worker" at the time Plaintiffs applied for their H-2A visas.
    20 C.F.R. § 655.122(q).

(b) Furnish to Plaintiffs on each pay period a written earning statement accurately showing the total earnings for the pay period, hourly rate and piece rate of pay, hours of employment offered, hours actually worked, itemization of all deductions from wages, the units produced each day, beginning and ending dates of the pay period, and the employer's name, address, and federal employer identification number.
    20 C.F.R. § 655.122(k).

(c) Provide housing with kitchen facilities that met local, state and federal requirements.
    20 C.F.R. § 655.122(d).

141.    Defendants breached their employment contract with Plaintiffs by failing to provide Plaintiffs with a complete copy of the employment contract in a language that they understood

when they applied for their H-2A visas as required by 20 C.F.R. § 655.122(q), as they were not given a complete copy of the Job Order and the Job Order was not completely and correctly translated into Spanish.

142.    Defendants also breached the employment contract by failing to provide Plaintiffs with complete and regular earning statements containing the information required by the H-2A regulations, 20 C.F.R. § 655.122(k).

143.    Defendants breached the employment contract by failing to provide Plaintiffs with housing that complied with Federal standards.

144.    Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)    Declare that Defendants violated the FLSA as specified in Counts I and II;

(b)    Declare that Defendants breached their employment contracts with Plaintiffs as specified in Counts III, IV, V, and VI;

(c)    Grant judgment against Defendants, jointly and severally, in favor of each Plaintiff, in the amount of his respective unpaid and lost wages as proved at trial, plus an equal amount in liquidated damages, and compensatory damages, pursuant to 29 U.S.C. § 216(b);

(d)    Order such legal and equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3).

(e)     Grant judgment against Defendants, jointly and severally, in favor of each Plaintiff, in

the amount of each Plaintiff's damages as they arose naturally and according to the

usual course of things from Defendants' breach of contract and such as the parties

contemplated, when the contract was made, as the probable result of such breach;

(f)     Award Plaintiffs pre- and post-judgment interest as allowed by law;

(g)     Award Plaintiffs attorneys' fees and the costs of this action; and

(h)     Award Plaintiffs such further relief, at law or in equity, as this Court deems just and

proper.

This 10th day of January, 2018                    Respectfully submitted,

                                                  */s/ Lauren Hoff-Downing*
                                                  Lauren Hoff-Downing
                                                  Lead Counsel
                                                  Georgia Bar No. 626374
                                                  Georgia Legal Services Program
                                                  104 Marietta Street NW, Suite 250
                                                  Atlanta, GA  30303
                                                  Phone:  (404) 463-1633
                                                  Fax:      (404) 463-1623
                                                  E-mail: lhoff-downing@glsp.org

                                                  */s/ Solimar Mercado-Spencer*
                                                  Solimar Mercado-Spencer
                                                  Georgia Bar No. 686614
                                                  Georgia Legal Services Program
                                                  104 Marietta Street NW, Suite 250
                                                  Atlanta, GA  30303
                                                  Phone:  (404) 463-1633
                                                  Fax:      (404) 463-1623
                                                  E-mail: smercado-spencer@glsp.org

                                                  */s/ Lisa J. Krisher*
                                                  Lisa J. Krisher
                                                  Georgia Bar No. 429762
                                                  Georgia Legal Services Program
                                                  104 Marietta Street NW, Suite 250

Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623
E-mail: lkrisher@glsp.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 10, 2018 a true and correct copy of the foregoing

FIRST AMENDED COMPLAINT was electronically filed with the Clerk of the Court using the

CM/ECF system and sent via U.S. Mail, with adequate postage, to:

> Wendel Hall
> Hall Law Office, PLLC.
> 1200 G Street, N.W., Suite 800
> Washington, D.C. 20005
> wendel@halllawoffice.net
> Counsel for Defendants Shiloh Berry Farm, Inc. and Wesley Shane Wade

> */s/ Lauren Hoff-Downing*
> Counsel for Plaintiffs

24